UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA ALEXIS,<br><br>                     Plaintiff,<br><br>v.<br><br>JAMES B. ROGERS, et al.,<br><br>                     Defendants. | Case No.:  15cv691-CAB (BLM)<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL PABLO IVAN FABIAN'S AND HULLINGER FIRM, PC'S COMPLIANCE WITH DEFENDANTS' SUBPOENA DUCES TECUM**<br><br>**AND**<br><br>**(2) DENYING DEFENDANTS' MOTION FOR SANCTIONS IN THE AMOUNT OF $3,654.50**<br><br>**[ECF No. 88]** |

Currently before the Court is Defendants' February 8, 2017 "Motion to Compel Pablo Ivan Fabian's and the Hullinger Firm, PC's Compliance with Defendants' Subpoena Duces Tecum, and

for Sanctions in the Amount of $3,654.50" [ECF No. 88-1 ("Mot.")] and Pablo Fabian's February 22, 2017 opposition to the motion [ECF No. 91 ("Oppo.")].  Plaintiff did not file an opposition or response to Defendants' motion.  See Docket.  Having considered the briefing and having reviewed all of the supporting exhibits, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Compel Pablo Ivan Fabian's and the Hullinger Firm, PC's Compliance with Defendants' subpoena Duces Tecum, and **DENIES** Defendants' Motion for Sanctions in the Amount of $3,654.50.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 27, 2015, Plaintiff filed a complaint alleging, *inter alia*, intentional and negligent infliction of emotional distress, sexual harassment, and retaliatory, wrongful termination.  ECF No. 1 at 30-32, 34-35.  Plaintiff alleges that she worked for Defendants from approximately January 2012 until she was unlawfully terminated in August 2013.  Id. at 6-7, 15.  Plaintiff claims that Defendant Rogers made "improper, explicit, and unwanted sexual advances for over the course of over a year," and that she was fired when she refused the advances.  Id. at 2, 11-15.  Plaintiff further alleges that after Defendants learned that she intended to file a sexual harassment suit against Mr. Rogers, they filed a retaliatory complaint against her in the Cook Islands on January 14, 2015, alleging extortion and seeking $650,000 in damages.  Id. at 16-17.  Plaintiff also contends that on February 8, 2015, she was physically injured in connection with the service of process of the Cook Islands complaint when Terri Safino "at the direction or request of the process server hired by Defendants," tried to physically drag Plaintiff from her house to the process server.  Id. at 18.  Safino was arrested, Plaintiff was taken by ambulance to the Emergency Room, and Plaintiff was treated for a concussion, corneal abrasion, and an injured foot.  Id.

At the end of December 2015, Plaintiff was involved in a car accident and retained Pablo Fabian and his firm, Hullinger & Fabian, APC ("the Hullinger firm"), to represent her in connection with the car accident. ECF No. 91-1, Declaration of Pablo I. Fabian ("Fabian Decl."). During the course of representation, Plaintiff sought Mr. Fabian's assistance with the February 8, 2015 Terri Safino "domestic violence matter," but did not retain Mr. Fabian to handle the matter. See id. at 2. In April 2016, Mr. Fabian was offered a position in the legal department at National University and withdrew from representing Plaintiff. Id.

On November 1, 2016, Defendants deposed Plaintiff. ECF No. 88-2, Declaration of Olaf J. Muller ("Muller Decl.") at 2; id., Exh. 1. On December 12, 2016, Defendants issued Subpoenas Duces Tecum to Mr. Fabian and the Hullinger firm seeking the attorney case file relating to Mr. Fabian's representation of Plaintiff. Muller Decl. at 3; id., Exh. 2; Fabian Decl. at 2. On December 21, 2016, Plaintiff's attorney in this case, Ms. Eck,[1] objected to the subpoenas claiming that they were overbroad, sought irrelevant information protected by the attorney-client privilege, and invaded Plaintiff's and third parties' privacy rights. Muller Decl., Exh. 2 at 7. The objection also stated that Plaintiff would seek an order from the Court quashing the subpoenas. Id. at 7-8. On December 27, 2016, Mr. Fabian, Mr. Hullinger, and the Hullinger firm objected to the subpoenas on the ground of the attorney-client privilege. See Fabian Decl. at 2-3; Muller Decl., Exh. 3.

At the end of December 2016, Mr. Fabian informed Plaintiff that her files were requested by the subpoenas at issue, Plaintiff did not initially respond, but on December 30, 2016, Plaintiff told Mr. Fabian that "it was fine." Fabian Decl. at 3. On January 2, 2017, Mr. Fabian advised

---

[1] On January 6, 2017, the District Judge granted Ms. Eck's unopposed motion to withdraw as counsel of record for Plaintiff. ECF No. 79.

Defendants that Plaintiff consented to the production of the documents sought in the subpoenas. See Fabian Decl. at 3; Muller Decl. at 4; id., Exh. 4 at 35.  Plaintiff did not sign the informed consent letter sent to her by Mr. Fabian at the end of December 2016, and, again, on January 3, 2017, and on some unspecified date in January 2017, Plaintiff advised Mr. Fabian that she would not sign an informed consent letter and "would not be giving [Mr. Fabian] authority to release the files."  Fabian Decl. at 3.  On January 26, 2017, Mr. Fabian and the Hullinger firm advised Defendants that they would not produce the documents requested in the subpoenas.  Muller Decl. at 4.

## LEGAL STANDARD

Federal Rule of Civil procedure 45(d)(2)(B) provides the following:

> A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested.  The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served.  If an objection is made, the following rules apply:
>
> (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
>
> (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

Id.

"Issues concerning application of the attorney-client privilege in the adjudication of federal law are governed by federal common law."  Clarke v. Am. Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992) (citing United States v. Zolin, 491 U.S. 554, 562 (1989); United States v. Hodge and Zweig, 548 F.2d 1347, 1353 (9th Cir. 1977); Fed. R. Evid. 501).

"The attorney-client privilege exists where: '(1) [ ] legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.'" United States v. Richey, 632 F.3d 559, 566 (9th Cir. 2011) (quoting United States v. Graf, 610 F.3d 1148, 1156 (9th Cir. 2010)). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." United States v. Martin, 278 F.3d 988, 999 (9th Cir. 2002) (quotation omitted). The privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege," and applies "only when necessary to effectuate its limited purpose of encouraging complete disclosure by the client." See Fisher v. United States, 425 U.S. 391, 403 (1976); Griffith v. Davis, 161 F.R.D. 687, 694 (C.D. Cal. 1995) (quoting Tornay v. United States, 840 F.2d at 1428). The party asserting the attorney-client privilege bears the burden to establish that the privilege applies to the requested documents, and that it has not waived the privilege. See Griffith, 161 F.R.D. at 694 (quoting Tornay, 840 F.2d at 1426); Weil v. Inv./Indicators, Research and Mgmt., Inc., 647 F.2d 18, 25 (9th Cir. 1981).

> When the disclosure is made in a federal proceeding . . . and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:
>
> (1) the waiver is intentional;
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
> (3) they ought in fairness to be considered together.

Fed. R. Evid. 502(a). "[T]he focal point of privilege waiver analysis should be the holder's disclosure of privileged communications to someone outside the attorney-client relationship, not

the holder's intent to waive the privilege." Tennenbaum v. Deloitte & Touche, 77 F.3d 337, 341 (9th Cir. 1996)). "The doctrine of waiver of the attorney-client privilege is rooted in notions of fundamental fairness: to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable." Century Aluminum Co. v. AGCS Marine Ins. Co., 285 F.R.D. 468, 471 (N.D. Cal. 2012) (internal quotation marks omitted) (citing Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A., 254 F.R.D. 568, 576 (N.D. Cal. 2008); Tennenbaum, 77 F.3d at 340-41); Bittaker v. Woodford, 331 F.3d 715, 719 (9th Cir. 2003) ("[P]arties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials.").

"[T]he disclosure of information resulting in the waiver of the attorney-client privilege constitutes waiver only as to communications about the matter actually disclosed." Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1162 (9th Cir. 1992) (citation omitted); Sizemore v. City of Madras, 2004 WL 1318883, at *2 (D. Or. June 10, 2004) (finding that the scope of waiver did not extend to "information beyond the privileged documents . . . actually disclosed"); see also Century Aluminum Co. v. AGCS Marine Ins. Co., 285 F.R.D. 468, 472 (N.D. Cal. 2012) (finding that the scope of an insurer's waiver of its attorney-client privilege by selective disclosure of privileged document extended to all of coverage counsel's communications and work product on the subject matter of the insurer's weather investigation, but not to "all communications with [the coverage counsel], with no limitation on topic."); Sedco Int'l, S.A. v. Cory, 683 F.2d 1201, 1206 (8th Cir. 1982) (noting that the attorney-client privilege may be waived when a client

testifies about portions of a communication or when a client places the attorney-client relationship directly at issue).

## DISCUSSION

Defendants ask the Court to order Mr. Fabian and the Hullinger firm to comply with the subpoenas at issue. See Mot. In support, Defendants contend that Plaintiff extensively discussed during her deposition privileged communications with Mr. Fabian concerning her car accident, the circumstances surrounding her altercation with Terri Safino, the investigation by the San Diego City Attorney, the alleged "bribery" of Mr. Fabian, and the alleged interference with the investigation and/or litigation by "powerful people." Id. at 4. Defendants argue that the requested documents are highly relevant because Plaintiff placed the above matters at issue by alleging that they contributed to her emotional distress and by implying that Defendants were the cause of such distress. Id. at 5. Defendants assert that they are entitled to investigate the nature, source, and extent of Plaintiff's injuries, as well as Plaintiff's efforts to mitigate her economic damages. Id. Defendants further assert that Plaintiff's objection to the disclosure of the requested documents made after her deposition is not sufficient to prevent the production of responsive documents. Id. at 4. Defendants also ask the Court to sanction Plaintiff in the amount of $3,654.50, the fees that they incurred in connection with this motion to compel. Id. 5-6.

Mr. Fabian explains in his opposition that Defendants' subpoena seeks privileged communications and documents exchanged between him, his former partner, Mr. Hullinger, and their former client, Plaintiff, in connection with their representation and counsel in an automobile collision case, and a separate case involving an altercation between Plaintiff and her neighbor. Oppo. at 2. Mr. Fabian states that he has standing to oppose Defendants' motion, that the facts

and communications he shared with Plaintiff during the course of her representation are covered by the attorney-client privilege, and the subpoenaed documents include private medical and financial information. Id. at 2-5. Mr. Fabian claims that upon receipt of the subpoena at issue, Plaintiffs' counsel in this case objected to the subpoena asserting privilege, and that therefore the privilege has not been waived. Id. at 5. Mr. Fabian further claims that even if there was a waiver, pursuant to California law, the scope of privilege waiver is narrowly defined and the information to be disclosed "must strictly fit within the confines of the waiver." Id. (citing Sony Comp. Enter. America, Inc. v. Great America Ins. Co., 229 F.R.D. 623 (N.D. Cal. 2005)). Mr. Fabian worries that disclosure of the "entire attorney client case file, based on specific testimony given at Plaintiff's deposition, may be overbroad and burdensome." Id. at 5. Finally, Mr. Fabian argues that the sanctions sought by Defendants are not appropriate. Oppo. at 5-6.

On December 12, 2016, Defendants issued subpoenas directed to Mr. Fabian and the Hullinger Firm, PC. Muller Decl., Exh. 1 at 17-30. The subpoenas seek the following information:

1. All DOCUMENTS relating to and including the attorney case file of LAURA ALEXIS.

2. All DOCUMENTS relating to Pablo Ivan Fabian's legal representation of LAURA ALEXIS in the matter of the Dec. 2015 auto accident in which LAURA ALEXIS was involved.

3. All DOCUMENTS relating to Pablo Ivan Fabian's legal representation of LAURA ALEXIS in the matter of the Feb. 2016 altercation between LAURA ALEXIS and Terri Safino.

4. All COMMUNICATIONS between Pablo Ivan Fabian and the Office of the City Attorney in San Diego relating to Pablo Ivan Fabian's legal representation of LAURA ALEXIS.

5. All COMMUNICATIONS between Pablo Ivan Fabian and LAURA ALEXIS relating to the Office of the City Attorney in San Diego.

Muller Decl., Exh. 1 at 19-20, 26-27.

Plaintiff testified during her December 1, 2016 deposition that she was involved in a car accident at the end of December 2015, sustained injuries to her head, neck, shoulders, spine, eye, and feet during the accident, and was undergoing treatment for those injuries. Id., Exh. 1 at 2. Plaintiff stated that she hired Mr. Fabian to represent her in connection with the car accident, that Mr. Fabian sent an e-mail to the San Diego City Attorney's Office's "investigator" regarding the Terri Safino investigation, informed her that "somebody very powerful" was trying to "shut down everything" and that he would not get involved, and that Mr. Fabian was offered a different job and had to close down his law practice. Id. at 3-5. Plaintiff stated that she suffered from emotional distress as a result of (1) the injuries she sustained in her "very strange" car accident and in the Safino incident, both of which were not investigated, (2) her attorney's statement that "very powerful people [were] shutting down everything," and (3) Mr. Fabian's abrupt departure from his law practice. Id. at 2-4. Plaintiff also testified that Mr. Fabian gave her a copy of the letter he wrote to the San Diego City Attorney's Office. Id. at 3-4. Plaintiff described the contents of the letter during her deposition. Id.

Because the deposition transcript portions attached to Defendants' motion establish that Plaintiff intentionally testified about some of the privileged communications she had with Mr. Fabian, Plaintiff has waived the privilege as to those communications and as to information concerning the same subject matter which ought in fairness be considered together. See Fed. R. Evid. 502(a). However, Plaintiff has not waived the privilege as to all communications she had with Mr. Fabian.

Defendants' requested subpoena topics are overbroad as they seek privileged information that was not waived by Plaintiff's deposition testimony and information that is not relevant and proportional to issues and claims in the instant case. See Muller Decl., Exh. 1; see also See Fed.

R. Civ. P. 26(b)(1) (allowing discovery regarding any "nonprivileged matter that is relevant to any party's claim or defense" that is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."). Defendants have not established the relevancy and proportionality of "all documents relating to" Plaintiff or to Mr. Fabian's representation of Plaintiff with regard to her December 2015 car accident and her February 2016 altercation with Terri Safino. The Court therefore **DENIES** Defendants' request to compel all of the documents described in categories 1-3. Likewise, Defendants do not appropriately limit the scope of categories 4 and 5 as they seek all communications between Mr. Fabian and the City Attorney's Office relating to the representation of Plaintiff and all communications between Mr. Fabian and Plaintiff relating to the City Attorney's Office. Category 4 potentially includes irrelevant documents and category 5 encompasses privileged documents not waived by Plaintiff's testimony so the Court **DENIES** Defendants' request to compel all of the documents described in categories 4 and 5.

*All* of the details regarding Plaintiff's car accident and injuries and her altercation with Ms. Safino are not relevant to the instant case. In the instant case, Plaintiff is claiming, *inter alia*, emotional distress damages and lost wages. See ECF No. 1 at 30-32, 34-36. As such, evidence indicating that Plaintiff suffered emotional distress as a result of either the car accident or the altercation with Ms. Safino is relevant and proportional to the instant case. Likewise, Plaintiff appears to be alleging during her deposition testimony that Defendants caused the car accident or caused the City Attorney's Office to decide not to investigate Plaintiff's allegations so documents relating to those allegations are relevant to the instant case. Plaintiff also had a duty

to mitigate her economic losses after her termination so any documents relating to her mitigation efforts or her inability to engage in mitigation efforts are relevant and proportional to the instant dispute.

Mr. Fabian is ordered to respond to the subpoena by producing all non-privileged documents evidencing 1) any emotional distress suffered by Plaintiff as a result of the 2015 car accident or the 2016 altercation with Ms. Safino, 2) Plaintiff's allegation that Defendants caused her 2015 car accident and/or interfered with her request to have the San Diego City Attorney's Office investigate the car accident and altercation with Ms. Safino, 3) correspondence with the San Diego City Attorney's Office in 2015 or 2016 regarding a request by Plaintiff or Mr. Fabian to investigate Plaintiff's 2015 car accident or 2016 altercation with Ms. Safino and the Office's response thereto, and 4) Plaintiff's efforts to mitigate her economic losses after her termination from her employment in August 2013 or her inability to engage in mitigation efforts.  The court further finds that Plaintiff has waived the attorney-client privilege with regard to her communications with Mr. Fabian regarding the investigation into the circumstances of the 2015 car accident and 2016 altercation with Ms. Safino (indicating Defendants' alleged involvement), and the effect either of these events had on her ability to mitigate her economic losses after her termination and on any emotional distress caused by these incidents.  Plaintiff also has waived the attorney-client privilege as to Defendants' alleged interference with Plaintiff's request to have the San Diego City Attorney investigate the car accident and Safino altercation. Accordingly, Mr. Fabian also must produce any privileged communications that concern these topics or that in fairness ought to be considered with these topics.  See Fed. R. Evid. 502(a).  Mr. Fabian must produce the documents specified in this order by **March 31, 2017**.

### b. Defendants' Request for Sanctions

Defendants ask the Court to sanction Plaintiff in the amount of $3,654.50, the fees that they incurred in connection with this motion to compel. Mot. 5-6 (citing Fed. R. Civ. P. 37(a)(5)(A), (b)(2)(A)-(C)). Defendants have submitted a declaration detailing their fees. See Muller Decl. at 4-5. Federal Rule of Civil Procedure 37 authorizes a Court to award reasonable fee, including attorney's fees, to the prevailing party. See Fed. R. Civ. P. 37(a)(5)(A). Here, Defendants' motion, once again, sought to compel overbroad discovery requests and Defendants made no effort to narrow their requests in response to counsel's objection that the requests were overbroad. Because Defendants only partially prevailed on their motion, the Court **DENIES** Defendants' requests for their expenses.

### SUMMARY AND CONCLUSION

For the foregoing reasons, the Court:

(1) **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Compel Pablo Ivan Fabian's and the Hullinger Firm, PC's Compliance with Defendants' Subpoena Duces Tecum. Mr. Fabian must produce the documents specified in this order by **March 31, 2017**;

(2) **DENIES** Defendants' motion for sanctions.

**IT IS SO ORDERED.**

Dated: 3/20/2017

Hon. Barbara L. Major
United States Magistrate Judge