1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                              SOUTHERN DISTRICT OF CALIFORNIA

10

11    LAURA ALEXIS,                              Case No.:  15cv691-CAB (BLM)

                                   Plaintiff,
12                                               **ORDER GRANTING IN PART AND
      v.                                         DENYING IN PART DEFENDANTS'
13                                               OMNIBUS DISCOVERY MOTION**
      JAMES B. ROGERS, et al.,
14                                Defendants.    **[ECF No. 82]**

15

16

17          On January 20, 2017, Defendants filed an "Omnibus Discovery Motion and Motion for

18    Terminating Issue, Evidentiary, and/or Monetary Sanctions Against Plaintiff."   ECF No. 82

19    ("Mot.").   Plaintiff did not oppose the motion.   <u>See</u> Docket.   Defendants seek a variety of

20    sanctions, including terminating sanctions, for a number of alleged discovery violations.   The

21    Court will address each of Defendants' allegations.

22

23
                                              1

**FACTUAL BACKGROUND**

On March 27, 2015, Plaintiff filed a complaint alleging, *inter alia*, intentional and negligent infliction of emotional distress, sexual harassment, and retaliatory, wrongful termination.  ECF No. 1 at 30-32, 34-35.  Plaintiff seeks general damages, lost earnings, punitive and exemplary damages, pre-judgment interest, costs of suit, and attorneys' fees, and an injunction "restraining Defendants from continuing to engage in unlawful and unfair business practices." Id. at 35-36. Plaintiff alleges that she worked for Defendants from approximately January 2012 until she was unlawfully terminated in August 2013. Id. at 6-7, 15.  Specifically, Plaintiff claims that Defendant Rogers made "improper, explicit, and unwanted sexual advances for over the course of over a year," and that she was fired when she refused the advances.  Id. at 2, 11-15.  Plaintiff further alleges that after Defendants learned that she intended to file a sexual harassment suit against Mr. Rogers, they filed a retaliatory complaint against her in the Cook Islands on January 14, 2015, alleging extortion and seeking $650,000 in damages.  Id. at 16-17.  Plaintiff also contends that on February 8, 2015, she was physically injured in connection with the service of process of the Cook Islands complaint when Terri Safino "at the direction or request of the process server hired by Defendants," tried to physically drag Plaintiff from her house to the process server.  Id. at 18.  Safino was arrested, Plaintiff was taken by ambulance to the Emergency Room, and Plaintiff was treated for a concussion, corneal abrasion, and an injured foot.  Id.

**I.      Plaintiff's Deposition**

Defendants argue that the Court should impose terminating sanctions against Plaintiff because Plaintiff "has made it exceedingly clear that she will not obey this Court's December 16, 2016 Order and appear for additional deposition time." Id. at 9.  Defendants further state that

2

1    if the Court does not order terminating sanctions, Defendants intend to depose Plaintiff "for

2    longer that the Court-ordered three hours." Id. at n.1.

3         On December 16, 2016, the Court issued an order authorizing Defendants to depose

4    Plaintiff for an additional three hours but limiting the scope of the questioning to the emails and

5    documents produced after Plaintiff's first deposition.  ECF No. 69 at 19.  As such, Defendants

6    may depose Plaintiff, but only for three hours.  Defendants are not authorized to depose Plaintiff

7    for a longer period of time.  Moreover, the fact that Defendants do not think Plaintiff will comply

8    with this Court's order to appear for a deposition, does not warrant the imposition of terminating

9    sanctions at this time.  Accordingly, Defendant's motions for terminating sanctions and to depose

10   Plaintiff for more than three hours are **DENIED**.

11        Defendant's motion to compel an additional deposition of Plaintiff is **GRANTED IN PART**.

12   Defendants may depose Plaintiff for three hours at a location in San Diego.  Any breaks

13   requested by Plaintiff will not be included in the three hour time period.  The court reporter will

14   be the official timekeeper.  Defendants' questioning is limited to the emails and documents that

15   were produced after Plaintiff's first deposition.  The deposition must occur on or before **April 14,**

16   **2017**.  On or before **March 27, 2017**, Defendants must notify Plaintiff in writing of the

17   proposed date and place for the deposition.  If the initial date is not acceptable to Plaintiff,

18   counsel must work with Plaintiff to find a mutually agreeable date.  If the parties are unable to

19   agree on a date, the deposition will occur on Monday, **April 10, 2017** starting at **9:00 a.m.**

20   Plaintiff is **ORDERED** to appear for her deposition in person at the location identified by

21   Defendants.

22

23

## II.    Protective Order

Defendants argue that the Court should impose terminating sanctions against Plaintiff because she "has made exceedingly clear that she will not obey this Court's August 26, 2016 Order imposing a Protective Order on confidential material exchanged in these proceedings." Id. at 11.  Defendants explain that they designated as confidential all of the "emails exchanged between the parties memorializing Plaintiff's consultancy relationship with Defendants" and Plaintiff designated portions of her medical records.  Id.  Defendants assert that Plaintiff "posted an inflammatory YouTube video" based in part on confidential material.   Id. at 11-12.  Defendants argue that terminating sanctions are appropriate because Plaintiff refused to remove the video, but Defendants subsequently admit that Plaintiff ultimately agreed to take the video down but that she has been unable to do so as of the date of Defendant's filing.  Id.

The Court **DENIES** Defendants' motion for terminating sanctions.  First, it is not clear that the involved documents were properly designated as confidential in this litigation.  Second, Defendants have not established that Plaintiff knowingly and intentionally violated the Protective Order as Plaintiff apparently agreed to remove the video.  Third, and most importantly, even if there is a violation of the Protective Order, terminating sanctions are not an appropriate remedy.

## III.    Mailing Address and Telephone Number

Defendants also ask the Court to "impose terminating or lesser sanctions" because Plaintiff has refused to provide a mailing address and working phone number.  Id. at 13-14.  Defendants acknowledge that Plaintiff has a working email address but complain that her phone has been disconnected.  Id. at 13; ECF No. 82-2, Declaration of Olaf J. Muller ("Muller Decl.") at 14-15.  Defendants claim that they have been "unfairly prejudiced" by their inability to talk with

4

1   Plaintiff.  Given the facts and allegations in this case, the Court **DECLINES** to require Plaintiff

2   to provide a new phone number to Defendants.  The Court's docket lists a mailing address for

3   Plaintiff.  If it is not accurate, Plaintiff must update the docket by **March 30, 2017**.  Defendants'

4   motion for sanctions is **DENIED.**

5   **IV.   Independent Mental Examination**

6          Defendants ask the Court to require Plaintiff to submit to an Independent Mental

7   Examination ("IME") pursuant to Fed. R. Civ. P. 35.  Mot. at 14-18.  Defendants argue that an

8   IME is necessary because Plaintiff is claiming Defendants caused her severe emotional distress

9   and is seeking millions of dollars in damages.  Id.  Defendants explain that Plaintiff indicated in

10  her initial disclosures that she intends to present expert testimony on her emotional injuries,

11  Plaintiff produced her medical records, including psychiatric or psychological treatment, and

12  Plaintiff testified during her deposition about the severe emotional distress she suffered and

13  compared it to battered woman's syndrome.  Id.; Muller Decl. at 11-12.

14         Fed. R. Civ. P 35(a) allows the Court to order a party "to submit to a physical or mental

15  examination by a suitably licensed or certified examiner" when that party's mental or physical

16  condition is in controversy.  The order "may be made only on motion for good cause and on

17  notice to all parties and the person to be examined" and "must specify the time, place, manner,

18  conditions, and scope of the examination, as well as the person or persons who will perform it."

19  Id.

20         "Although the Ninth Circuit has not addressed the 'in controversy' requirement, a court in

21  this district announced a test in Turner v. Imperial Stores, 161 F.R.D. 90 (S.D. Cal. Apr. 7, 1995),

22  that has been regularly applied by district courts."  Nguyen v. Qualcomm Inc., 2013 WL 3353840,

23

1   at *3 (S.D. Cal. July 3, 2013) (citing <u>Montez v. Stericycle, Inc.</u>, 2013 WL 2150025, at *3 (E.D.

2   Cal. May 16, 2013); <u>Tamburri v. SunTrust Morg. Inc.</u>, 2013 WL 942499, at *3 (N.D. Cal. Mar. 11,

3   2013); <u>Sanders v. Holdings</u>, 2012 WL 2001967, at *2 (S.D. Cal. June 4, 2012); <u>Hongwei Zhang</u>

4   <u>v. United Technologies Corp.</u>, 2011 WL 3890262, at *1 (S.D. Cal. Sept. 2, 2011)).  According to

5   <u>Turner</u>, courts will order an IME where a plaintiff alleges emotional distress and one or more of

6   the following:

7       1) a cause of action for intentional or negligent infliction of emotional distress;
        2) an allegation of a specific mental or psychiatric injury or disorder; 3) a claim of
8       unusually severe emotional distress; 4) plaintiff's offer of expert testimony to
        support a claim of emotional distress; and/or 5) plaintiff's concession that his or
9       her mental condition is "in controversy" within the meaning of Rule 35(a).

10  <u>Turner</u>, 161 F.R.D. at 95.  In assessing whether "good cause" exists, courts have considered

11  "the possibility of obtaining desired information by other means, whether plaintiff plans to prove

12  her claim through testimony of expert witnesses, whether the desired materials are relevant,

13  and whether plaintiff is claiming ongoing emotional distress."  <u>Juarez v. Autozone Stores, Inc.</u>,

14  2011 WL 1532070, at *1 (S.D. Cal. Apr. 21, 2011) (quoting <u>Impey v. Office Depot, Inc.</u>, 2010

15  WL 2985071, at *21 (N.D. Cal. July 27, 2010) (citation omitted)).  Regardless of the results of

16  the good cause inquiry, the Court has discretion to determine whether to order an examination.

17  <u>Nguyen</u>, 2013 WL 3353840, at *4 (citing <u>Williams v. Troehler</u>, 2010 WL 121104, at *4 (E.D. Cal.

18  Jan. 7, 2010) ("even if good cause is shown, it is still within the court's discretion to determine

19  whether to order an examination."); <u>Kob v. County of Marin</u>, 2009 WL 3706820, at *3 (N.D. Cal.

20  Nov. 3, 2009) (since the defendant failed to show good cause, "it remained within the court's

21  discretion whether to grant the Rule 35(a) order."); <u>Hodges v. Keane</u>, 145 F.R.D. 332, 334 (S.D.

22

23

1  N.Y. Jan. 6, 1993) (since defendant does not allege ongoing suffering, "a Rule 35(a) order lies

2  soundly within the court's discretion.")).

3      Here, Plaintiff has alleged claims for both negligent and intentional infliction of emotional

4  distress.  ECF No. 1 at 5, 30-32.  Plaintiff also has alleged that "[a]s a result of Defendants'

5  conduct, [Plaintiff] has suffered, and continues to suffer, humiliation, embarrassment, emotional

6  distress, and mental anguish." Id. at 5, 18-32.  In the Intentional Infliction of Emotional Distress

7  claim, Plaintiff describes her emotional distress as "severe." Id. at 30.  While Plaintiff did not

8  oppose the instant motion and did not provide information regarding the use of experts or

9  specific claims, Defendants represent that Plaintiff's Initial Disclosures included an intention to

10  utilize expert opinions to prove damages, Plaintiff testified she has continued to seek medical

11  treatment for her emotional injuries, and Plaintiff's prior counsel indicated that Plaintiff's mental

12  condition was "in controversy" for purpose of Rule 35.  See Mot. at 15; Muller Decl. at 11-12.

13      The Court also finds that the scope of Defendants' request is appropriately tailored and

14  not overbroad.  Defendants state that the examination will be conducted by Defendants' retained

15  examiner, Dr. David Glaser M.D., will not exceed a full day, and will consist of five to seven

16  psychological tests, an interview of Plaintiff, and a psychological review.  Mot. at 17-18.

17      Defendants' motion for an IME is **GRANTED** and Plaintiff is **ORDERED** to submit to an

18  independent mental examination by Dr. David Glaser M.D. on a date to be determined by

19  Defendants but no later than **April 14, 2017** at a location in San Diego, California. The

20  examination may require up to two and one half hours for psychological testing and an additional

21  five hours of clinical interviews (excluding breaks and lunch).  On or before **March 27, 2017**,

22  Defendants must notify Plaintiff in writing of the date, time and location for the IME.

23

7

15cv691-CAB (BLM)

**V.      Forensic Examination of Plaintiff's Computer**

Defendants ask the Court to require Plaintiff to turn over her computer and hard drives to a third party vendor for an independent forensic examination.  Mot. at 18-19.  Defendants explain that Plaintiff testified that her computer crashed at least three times and that she lost "access to pertinent records and information."  Id. at 18 (citing Alexis deposition at 112:16-113:12).  Defendants also assert that the majority of Plaintiff's work with Defendants was performed remotely via computer and that Plaintiff's mitigation efforts also would have occurred via computer.  Id. at 18-19.  Defendants are willing to pay for the examination and permit Plaintiff to review the evidence for relevance, privilege, and privacy.  Id. at 19.

A party may request, within the scope of Fed. R. Civ. P. 26(b), that any other party produce and permit the requesting party to "inspect, copy, test, or sample" the materials sought under the rule.  Fed. R. Civ. P. 34(a)(1).  However,

> [i]nspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy.  The addition of testing and sampling to Rule 34(a) with regard to documents and electronically stored information is not meant to create a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances.  Courts should guard against undue intrusiveness resulting from inspecting or testing such systems.

Fed. R. Civ. P. 34 advisory committee's note.

"[C]ompelled forensic imaging is not appropriate in all cases, and courts must consider the significant interests implicated by forensic imaging before ordering such procedures."  Han v. Futurewei Tech., Inc., 2011 WL 4344301, at *3 (S.D. Cal. Sept. 15, 2011) (quoting John B. v. Goetz, 531 F.3d 448, 460 (6th Cir. 2008)).  A compelled forensic examination may be allowed where data is likely to be destroyed or where "computers have a special connection to the

1  lawsuit." See Ingrid & Isabel, LLC v. Baby Be Mine, LLC, 2014 WL 1338480, at *9 (N.D. Cal.

2  Apr. 1, 2014); Advante Int'l Corp. v. Mintel Learning Tech., 2006 WL 1806151, at *1 (N.D. Cal.

3  June 29, 2006); Balboa Threadworks, Inc. v. Stucky, 2006 WL 763668, at *3 (D. Kan. Mar. 26,

4  2006); Brady v. Grendene USA, Inc., 2015 WL 4523220, at *7-9 (S.D. Cal. Jul. 24, 2015); see

5  also Playboy Enterprises, Inc. v. Welles, 60 F. Supp. 2d 1050, 1051-54 (S.D. Cal. 1999) (finding

6  that plaintiff was entitled to discovery of deleted emails contained on defendant's computer;

7  reasoning that the information was relevant because "e-mails may provide evidence in support

8  of [plaintiff's] trademark infringement and dilution claims, as well as defense to [d]efendant's

9  claim for emotional distress."). However, "mere skepticism that an opposing party has not

10  produced all relevant information is not sufficient" to warrant a forensic examination of an

11  adversary's computer. See Brady, 2015 WL 4523220, at *7-9 (citation omitted) (denying

12  defendants' request for the court-ordered forensic examination of plaintiff's computer; reasoning

13  that defendants failed to establish "through declaration or exhibit," that the requested

14  examination was likely to yield "deleted or purged" emails, and that the missing emails were "so

15  central to the[] defense of th[e] case as to require the extreme remedy of a forensic

16  examination," as opposed to sanctions). Further, a compelled forensic examination is only

17  appropriate where there is a protocol in place that will protect against unwarranted invasion of

18  privacy. See Ingrid & Isabel, LLC, 2014 WL 1338480, at *9; Playboy Enterprises, Inc., 60 F.

19  Supp. 2d at 1054-55.

20       Here, Defendants have established that since most of Plaintiff's work, both for Defendants

21  and after her termination, was performed using her computer, Plaintiff's computer and/or hard

22  drive(s) likely contain relevant emails between Defendants and Plaintiff, documents supporting

23

9

or refuting Plaintiff's claims, including her claims regarding mitigation of economic damages.  In addition, Plaintiff's deposition testimony indicates that her computer or hard drive crashed and that she lost, or subsequently was unable to locate, relevant documents.  As a result, Defendants have established a legal basis justifying their request for a forensic examination of Plaintiff's computer and/or hard drive(s).

However, there are several problems with Defendants' request.  First, Defendants do not provide any specifics regarding the computer and/or hard drives(s) that Plaintiff used while working for Defendants, that Plaintiff used to perform her work after her termination, or that crashed.  As a result, the Court does not know how to describe which items Plaintiff must provide to the independent computer forensic expert.  Second, Defendants do not provide the identity or qualifications of the forensic expert.  Third, and most importantly, Defendants do not provide any details regarding the forensic examination, other than that they would pay for it and Plaintiff would be able to review the data for privilege and relevance.  Despite filing hundreds of pages of exhibits, Defendants did not provide a proposed protocol.  Plaintiff's computer and hard drive(s) likely contain a large amount of irrelevant, personal, and confidential information and yet Defendants provide no specifics regarding the search protocol, including what data or documents the computer expert will be searching for, what reports if any will be provided to Defendants, what documents and data will be retrieved, what documents and data Defendants expect Plaintiff (or the examiner) to provide to them, etc.  As a result, Defendants' motion to compel a forensic examination of Plaintiff's computer is **DENIED WITHOUT PREJUDICE**.

///

///

## VI.    Supplemental Discovery

Defendants move to compel Plaintiff to provide supplemental discovery responses to two interrogatories and numerous requests for production ("RFPs") of documents.  Mot. at 19-20. Initially, the Court notes that Defendants make no effort to consolidate the legal or factual issues and merely retype every request and response.   As a result, Defendants' argument for supplemental discovery response is set forth in two separate statements totaling more than 60 pages.  See ECF Nos. 82-10 and 82-11.  Despite the length of the statements, Defendants' argument does not contain any case law or legal analysis and merely repeatedly states that Defendants have a right to everything they are requesting.  Id.  Defendants also do not provide any information regarding the scope or type of discovery that Plaintiff has produced, although it is clear from Defendants' other arguments that Plaintiff has in fact produced emails and other documents in discovery.  The Court is dismayed by Defendants' inability to concisely state their legal and factual arguments and by their failure to provide relevant and necessary factual and legal information.  Nonetheless, the Court has reviewed Defendants' requests and **GRANTS IN PART AND DENIES IN PART** the requests.

The scope of discovery under the Federal Rules of Civil Procedure is defined as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

15cv691-CAB (BLM)

1    District courts have broad discretion to determine relevancy for discovery purposes.  See

2  Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002).  District courts also have broad discretion

3  to limit discovery to prevent its abuse.  See Fed. R. Civ. P. 26(b)(2) (instructing that courts must

4  limit discovery where the party seeking the discovery "has had ample opportunity to obtain the

5  information by discovery in the action" or where the proposed discovery is "unreasonably

6  cumulative or duplicative," "obtain[able] from some other source that is more convenient, less

7  burdensome, or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)").

8    An interrogatory may relate to any matter that may be inquired under Rule 26(b).  Fed.

9  R. Civ. P. 33(a)(2).  "The grounds for objecting to an interrogatory must be stated with

10  specificity," and any interrogatory not objected to must be answered fully in writing under oath.

11  Fed. R. Civ. P. 33(b)(4).

12    In Interrogatory No. 6, Defendants seek additional identifying information for two

13  witnesses—Liliana and Lilia.  ECF No. 82-10 at 2-3.  In her response, Plaintiff states that she

14  does not know the last name of either individual.  Id.  If Plaintiff has contact information for

15  either individual, she must provide that contact information (physical address, email address,

16  phone number etc.) to Defendants in a supplemental response.

17    In Interrogatory No. 19, Defendants seek the identity of any person who worked on any

18  computer application with Plaintiff from 2012 to the present.  Id. at 4.  Defendants assert that

19  Plaintiff testified that she worked on a cell phone application after her termination by Defendants

20  in an effort to mitigate her economic damages but that she testified that she could not remember

21  the names of the programmers with whom she worked and she further alleged that they

22  scammed her out of her income from the application.  Id. at 4-5.  The Court finds that this

23

1    interrogatory seeks relevant information and orders Plaintiff to answer it by providing the full

2    name and contact information for every person she worked with on a computer application from

3    the date of termination (August 2013) to the present.

4           A party may request the production of any document within the scope of Rule 26(b).

5    Fed. R. Civ. P. 34(a).  "For each item or category, the response must either state that inspection

6    and related activities will be permitted as requested or state with specificity the grounds for

7    objecting to the request, including the reasons."  Id. at 34(b)(2)(B).  Fed. R. Civ. P. 34(b)(2)(C)

8    further requires the responding party to state whether any responsive materials are being

9    withheld on the basis of a stated objection.  Fed. R. Civ. P. 34(b)(2)(C).  If a responding party

10   withholds responsive material, the responding party must state the specific non-frivolous

11   grounds for doing so.  See Kellgren v. Petco Animal Supplies, Inc., 2016 WL 4097521, at *3

12   (S.D. Cal. May 26, 2016) (citing Fed. R. Civ. P. 34 advisory committee's notes) (stating that Rule

13   34(b)(2)(B) was amended to "eliminat[e] any doubt that less specific objections might be

14   suitable under Rule 34," and noting the "specificity of the objection ties to the new provision in

15   Rule 34(b)(2)(C) directing that an objection must state whether any responsive materials are

16   being withheld on the basis of that objection."); see also Thomas v. Saafir, 2007 WL 1063474,

17   at *2 (N.D. Cal. Apr. 9, 2007) (finding that a party's supplemental response stating that a

18   "diligent search and reasonable inquiry of all available sources" was conducted, that the party

19   could not locate the requested documents, and that as a result, the requested documents were

20   not in the party's "possession, custody or control" satisfied the party's obligation under Rule 34);

21   see id. (citing Searock v. Stripling, 736 F.2d 650, 654 (11th Cir. 1984) (finding that defendant's

22

23

                                                          13

1  statement as to "inability, after a good faith effort, to obtain" requested documents satisfied

2  Rule 34)).

3          In RFPs 316-318, Defendants seek all documents relating to Plaintiff's computer work and

4  argue that the requests are relevant to determine whether Plaintiff mitigated or attempted to

5  mitigate her economic damages.   ECF No. 82-11 at 2-6.   In RFPs 319-320 and 322-332,

6  Defendants seek a wide variety of documents and communications relating to Plaintiff's 2015

7  car accident.  Id. at 6-24.  Defendants argue that the documents are relevant because Plaintiff

8  testified that the car accident caused her similar emotional distress damages to those alleged in

9  the instant case.  Id.  Surprisingly, Defendants also state, without factual or legal support, that

10  they "are entitled to investigate Plaintiff's claims regarding the events underlying this car

11  accident, Plaintiff's efforts to sue the other driver involved, and her demands made upon the

12  San Diego City Attorneys' Office regarding the same." Id.  In Interrogatory No. 333, Defendants

13  seek "[a]ll documents relating to Plaintiff's efforts to obtain a restraining order against Terri

14  Safino." Id. at 24.  Plaintiff agreed to produce documents showing that she filed a temporary

15  restraining order against Terri Safino but Defendants object to this response and argue that they

16  are entitled to all of the requested documents because Plaintiff's complaint alleges that

17  Defendants caused the altercation.   Id. at 25.   In RFPs 337-340, Defendants seek all

18  communications between Plaintiff and Elon Musk and all proposals presented to Elon Musk on

19  the grounds that they evidence Plaintiff's efforts to mitigate her economic damages and object

20  to Plaintiff's agreement to provide "documents consisting of, or sufficient to demonstrate,

21  [Plaintiff's] proposal to Elon Musk." Id. at 31-35.  In RFPs 341 and 342, Defendants seek all

22  documents reflecting Plaintiff's application for, or receipt of, unemployment insurance and object

23

14

to Plaintiff's response that "No such documents exist." Id. at 35-38.  In RFP 343, Defendants

seek "[a]ll documents evidencing Plaintiff's weight from 2008 to date." Id. at 38.  In RFPs 344-

349, Defendants seek all documents from 2012 to the present relating to Plaintiff's Medi-Cal

insurance, food stamps, and governmental financial support.  Id. at 39-45.  Plaintiff agreed to

provide documents establishing her receipt of governmental assistance, which would be relevant

to damage issues, but Defendants claim this response is insufficient and wants *all* such

documents. Id.  In RFPs 350-352, Defendants seek all documents relating to Plaintiff's computer

crash(es) from 2012 to date and are not satisfied with Plaintiff's response that she will produce

"documents sufficient to evidence Plaintiffs [sic] computer crashes or purchase of new

computers to the extent Plaintiff currently has such documents in her possession, custody, or

control." Id. at 46-50.  In RFPs 355 and 356, Defendants seek all documents evidencing any

heart problems experienced by Plaintiff and any treatment of such problems.  Id. at 50-53.

Defendants object to Plaintiff's statement that she does not have responsive, non-privileged

documents and merely state that "Plaintiff claims to suffer or to have suffered from a heart

condition" and that they "are entitled to determine and investigate whether and to what extent

Plaintiff's continued claimed heart condition has been caused by Defendants' misconduct or by

Plaintiff's heart condition." Id. at 51-52.  Defendants do not explain what claims Plaintiff is

asserting in this case that relate to her heart condition and all of the requested documents.  Id.

In RFPs 357-360, Defendants seek all documents evidencing communications between Plaintiff

and Svetlana in or around April 2013 and the contents of such communications, as well as all

communications regarding Defendants, and object to Plaintiff's statement that she has been

unable to locate any responsive and non-privileged documents. Id. at 53-58.

1    There are several problems with Defendants' requests and motion to compel.  First and

2    foremost, the requests are extremely overbroad and are not proportional to the needs of this

3    case.  For example, Defendants seek a number of types of documents relating to Plaintiff's

4    efforts to mitigate her economic damages.  While Plaintiff's mitigation efforts are relevant to the

5    instant dispute, Defendants do not attempt to limit the scope of their requests, either in the

6    original requests or in the motion to compel, to documents that would actually establish

7    mitigation efforts, or lack thereof, or to the amount of any income received but rather repeatedly

8    demand all documents that relate to Plaintiff's work on any computer application, all

9    communications with Elon Musk, and all documents reflecting any application for governmental

10   assistance.  Similarly, some of the mitigation requests seek documents from 2012 to the present

11   but Plaintiff was not terminated until August 2013 and Defendants fail to explain why the

12   requested time frame is appropriate.   Other requests do not contain any time limitation.

13   Additional examples of Defendants' failure to focus their requests on relevant and proportional

14   requests include the requests for all documents evidencing Plaintiff's weight from 2008 to the

15   present, all documents relating to Plaintiff's car accident in 2015 (not just those that relate to

16   damages at issue in this case), and all documents evidencing any heart problems and treatment

17   thereof.   Second, many of the requests, in addition to being overbroad, seek irrelevant

18   documents.  For example, RFP 343 seeks all documents evidencing Plaintiff's weight from 2008

19   to the present and RFPs 355 and 356 seek all documents (with no time limitation) evidencing

20   any heart problems and treatment thereof.  Third, Defendants do not state what documents

21   were produced by Plaintiff, why that production was insufficient, and precisely what type of

22   additional documentation Defendants are seeking and why. Rather, Defendants provide

23

Plaintiff's response (which sometimes was that no such documents exist or that specific types of documents will be produced) and then repeatedly state, without legal authority or analysis, that they are entitled to all of the documents they requested.  As discussed above, Defendants' original requests are extremely overbroad, seek irrelevant information, and are not proportional to the needs of this case so Defendants' repeated demand for all documents is not justified. Accordingly, Defendants' motion to compel the requested supplemental production to the identified RFPs is **DENIED**.

Because Plaintiff did not respond to Defendants' motion to compel, and because Defendants did not identify what responsive documents, if any, Plaintiff already has produced, the Court does not know what documents have been produced by Plaintiff and what documents need to be produced.  This uncertainty is exacerbated by the facts that Plaintiff agreed in some of her RFP responses to produce certain documents and some of Defendants' RFPs, while overbroad, seek some relevant and discoverable documents.  Accordingly, if Plaintiff has not already done so, the Court **ORDERS** Plaintiff to produce the following documents to Defendants by **April 4, 2017**:

- All non-privileged documents establishing Plaintiff's efforts to mitigate the economic losses she suffered after her termination in August 2013, her inability to engage in mitigation, the amount of any income received, and whether she was "scammed" out of any earned income.  This production must include documents evidencing Plaintiff's proposal to Elon Musk (as agreed in Plaintiff's response to RFPs 337-340).

- All non-privileged documents relating to emotional distress Plaintiff suffered as a result of her 2015 car accident.

- All non-privileged documents relating to emotional distress Plaintiff suffered as a result of her altercation with Terri Safino in 2016.

- All non-privileged documents supporting Plaintiff's claim that Defendants caused or contributed to the 2015 car accident or the 2016 altercation with Terri Safino, or interfered with Plaintiff's request that the San Diego City Attorney's investigate the car accident and altercation.

- The temporary restraining order filed against Terri Safino, and Plaintiff's application for the order (as agreed in Plaintiff's response to RFP 333).

- All non-privileged documents establishing governmental assistance (including Medi-Cal insurance, food stamps or assistance, housing assistance, etc.) received by Plaintiff between August 2013 and the present.

- All non-privileged documents supporting Plaintiff's claim that her computer crashed at any time from 2012 to the present, including evidence that she purchased or obtained a new computer (see agreement in Plaintiff's response to RFPs 350-352). The Court notes that while Defendants move to compel documents regarding whether the crash corrupted or deleted evidence relevant to this case, the actual RFPs only seek documents evidencing that the computer crashed and that Plaintiff purchased a new computer. See ECF No. 82-11 at 45-49.

Defendants also argue that many of Plaintiff's RFP responses stating that responsive documents were not located are inadequate because Plaintiff does not provide the certification required by Rule 34 affirming that Plaintiff conducted a diligent search and reasonable inquiry and was unable to locate any responsive documents and why the documents were not located. See id. at 17, 20, 22, and 36-38. Defendants are correct. Plaintiff must provide a supplemental response to RFPs 328, 330, 331, 335, 341, 342, 357, 358, 359, 360[1] stating (if true) that she

_____

[1] The Court notes that Defendants also seek a supplemental response to RFP 334. ECF No. 82-11 at 26-27. However, in their explanation, Defendants use the same boilerplate language they use in their other statements, which is that Plaintiff knows the Rule 34 requirements because she answered correctly in RFP 334. Id. The Court therefore **DENIES** Defendants' request to supplement RFP 334. Defendants also seek a supplemental response to RFPs 355 and 356, which seek all documents relating to Plaintiff's heart condition and treatment. Id. at 50-53. Because these requests seek irrelevant, privileged, and confidential documents and are not proportional to the needs of this case, the Court **DENIES** Defendants' request for supplementation as to RFPs 355 and 356.

conducted a diligent search and reasonable inquiry and was unable to locate any responsive documents.  Plaintiff also must provide a general explanation for why she was unable to locate any responsive documents—such as no documents ever existed or were ever in Plaintiff's custody or control, the documents were lost in a computer crash or other event, the documents were provided to another person or are in that person's possession (the name of the person must be provided), etc.  This supplemental response also must be provided to Defendants by **April 4, 2017**.

## VII.   Request for Monetary Sanctions

Finally, Defendants seek monetary sanctions for the costs they incurred in filing the instant motion.  Mot. at 20-21.  Fed. R. Civ. P. 37(a)(5)(C) provides that "[i]f the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.  An award of reasonable expenses should not be imposed if the moving party failed to attempt in good faith to resolve the dispute without court action, the opposing party's response was substantially justified, or other circumstances exist that make an award of expenses unjust.  Fed. R. Civ. P. 37(a)(5)(A).

Here, the Court granted in part and denied in part Defendants' omnibus motion.  As discussed above, many of Defendants' requests were extremely overbroad and over-reaching.  Likewise, Defendants' pleading papers were unreasonably lengthy, repetitive, and lacking in relevant legal and factual analysis so the requested fees are not reasonable.  Also, many of Defendants' motions are premised on the assumption that Plaintiff would not comply with their request, without actually giving Plaintiff the opportunity to comply.  Finally, as noted by

19

1    Defendants, Plaintiff may not have the ability to pay a monetary sanction.  Mot. at 10-11.

2    Accordingly, the Court exercises its discretion and denies the request for expenses.

3                                    **CONCLUSION**

4           For the reasons set forth above, Defendants' omnibus discovery motion is granted in part

5    and denied in part.  The details of the Court's order are set forth in the body of this order but

6    the following are reminders of the relevant dates and deadlines.

7           1)      On or before **March 27, 2017**, Defendants must notify Plaintiff in writing of the

8    date, time, and location of her deposition and independent medical examination.  Both events

9    must occur in San Diego, California before **April 14, 2017**.

10          2)      On or before **March 30, 2017**, Plaintiff must update the Court's docket to reflect

11   her correct mailing address, if the current one is incorrect.

12          3)      On or before **April 4, 2017**, Plaintiff must provide supplemental responses to

13   Interrogatory Nos. 6 and 19, must produce to Defendants the documents she agreed to produce

14   in her responses to RFPs 333, 337-340, 344-349, and 350-352, must produce to Defendants the

15   documents described on pages 17-18 of this order, and must provide the supplemental response

16   to the RFPs identified on page 18 of this order.

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23

1    **Plaintiff is hereby warned that failure to comply with any of this Court's orders**

2    **or the Federal Rules of Civil Procedure may result in the imposition of sanctions**

3    **including monetary sanctions, evidentiary sanctions and/or the dismissal or default**

4    **of your case.**

5        **IT IS SO ORDERED.**

6

7    Dated:  3/21/2017

8                                          Hon. Barbara L. Major
                                           United States Magistrate Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

15cv691-CAB (BLM)